NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| MATTHEW DONOHUE, | Civil Action No.: 22-5634 |
| Plaintiff(s), | |
| v. | **OPINION** |
| CAPELLA UNIVERSITY, LLC, *et al.*, | |
| Defendants. | |

**CECCHI, District Judge.**

## I.     INTRODUCTION

This matter comes before the Court on the motion to dismiss plaintiff Matthew Donohue's ("Plaintiff") amended complaint (ECF No. 19, "FAC") filed by defendants Capella University, LLC ("Capella" or the "University"), Rebecca Loehrer ("Loehrer"), Barry Trunk ("Trunk"), Julie Johnson ("Johnson"), Julie Baumberger ("Baumberger"), and Amy Donovan ("Donovan") (collectively, "Defendants") (ECF No. 21).  Plaintiff opposed Defendants' motion (ECF No. 25, "Opp."), and Defendants replied in support of their motion (ECF No. 26, "Reply").  The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b).  For the reasons set forth below, Defendants' motion is **GRANTED**.

## II.     BACKGROUND

### A.  Factual History[1]

Plaintiff, a New Jersey citizen, is a former doctoral student at Capella University, a private, Minnesota-based institution offering online learning throughout the United States.  FAC ¶¶ 2–3.

---

[1] For the purposes of this motion to dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to the Plaintiff.  *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

The individual Defendants are each employed at the University.  *Id.* ¶ 14.  During the 2020 winter quarter, Plaintiff was enrolled at Capella in Professor Donovan's class, PSY8501.  *Id.* ¶¶ 16, 19–20.  The instant litigation arises out of Plaintiff's submission of his Unit 4 assignment to Donovan and the disciplinary events that followed.

On February 14, 2020, Donovan informed Plaintiff via email that SafeAssign, a program used by Capella faculty to detect plagiarism in student submissions, characterized Plaintiff's assignment as 100% plagiarized.  *Id.* ¶¶ 25–26.  Donovan assigned Plaintiff a grade of 0% accordingly.  *Id.* ¶ 31.  Plaintiff contends that he properly paraphrased responses to the assignment's questions, that SafeAssign is "known to produce faulty results," and that Donovan stated to Plaintiff, "I do know very well that plagiarism tools can be faulty."  *Id.* ¶¶ 24, 27–28.  Donovan proceeded to submit an "Academic Honesty Violation" form to Capella's Learner Affairs Department to investigate the alleged plagiarism.  *Id.* ¶ 32.  On February 24, 2020, the Learner Affairs Department informed Plaintiff that "large portions of the [submitted] assignment's content 'appeared' to be copied from another learner's paper" and upheld the grade of 0%.  *Id.* ¶ 33.  Plaintiff subsequently participated in an April 29, 2020 telephone conference with the Faculty Review Panel, comprised of Loeherer, Trunk, Johnson, and Baumberger, in which he reiterated that he did nothing wrong but was nevertheless willing to accept the 0% grade and move forward with his studies. [2]  *Id.* ¶¶ 34–36.  On May 13, 2020, the Faculty Review Panel found that Plaintiff's conduct constituted a violation of Capella policy 3.01.01 ("Academic Integrity and Honesty").  *Id.* ¶ 40.  The group confirmed the earlier findings, including the grade of 0%, and required Plaintiff

---

[2] Plaintiff's amended complaint defines the Faculty Review Panel as the "Panel."  FAC ¶ 35.  The amended complaint subsequently mentions a "Learner Affairs Panel" and then reverts back to referencing the "Faculty Review Panel."  *See* FAC ¶ 48–50.  Plaintiff does not set forth any explanation regarding the distinction between the two.

to complete a "Remediation Assignment," a ten- to twelve-page paper on the importance of academic integrity. *Id.* ¶¶ 41–43.  On September 10, 2020, the President's Designee for Academic Appeals denied Plaintiff's appeal and upheld the Panel's decision. *Id.* ¶ 45.

Plaintiff, while attempting to complete the Remediation Assignment, discovered he was locked out of his Capella online library account. *Id.* ¶ 46.  Plaintiff contends that although the Remediation Assignment's instructions required citation to fifteen sources, he now only had access to "the few articles present in the Alumni library access."[3]  *Id.* ¶ 47.  On December 18, 2020,[4] Plaintiff was informed that he did not pass his Remediation Assignment and was required to rewrite it. *Id.* ¶ 48.  Plaintiff claims he was unable to receive feedback or find out who had reviewed his paper and "therefore had to rewrite the paper to the best of his knowledge and ability." *Id.* ¶ 49.

On March 23, 2021, Plaintiff learned that he did not pass his second attempt at the Remediation Assignment either, having failed to meet the required minimum number of citations in the body of his paper. *Id.* ¶¶ 50–53.  Plaintiff alleges that the instructions required "a minimum of 15 citations in the paper, [but they] did not state where these citations had to appear." *Id.* ¶ 52. Plaintiff believed the instructions "appeared to ask for 15 citations in general, not 15 citations in the body of the paper." *Id.*  Plaintiff claims he did, in fact, have 15 citations on his "works cited" page, but he included only five of them in the body of his paper for fear that SafeAssign would mark his paper as plagiarized again. *Id.* ¶ 53.  The fear purportedly stemmed from the Faculty Review Panel's previous commentary to Plaintiff that the SafeAssign software would consider his

---

[3] The amended complaint does not indicate how long the online account was inaccessible, the steps Plaintiff took, if any, to regain access, or the ultimate cause of the issue.
[4] The amended complaint identifies this date as December 18, **2021**. FAC ¶ 48.  The Court assumes that the actual date is December 18, **2020** based on the subsequent alleged events occurring in March through July of 2021.

work to be plagiarism if he "paraphrased and properly listed authors and references" because "the phrasing would be too close to the researcher['s] direct words." *Id.* ¶ 38.  Upon the second failure, on April 17, 2021, Capella dismissed Plaintiff from the school without opportunity for readmission, a decision affirmed on appeal on July 13, 2021.  *Id.* ¶¶ 54–57.

Plaintiff asserts damages in the form of at least one year of lost wages with a doctorate degree, costs expended pursuing his education at Capella without realization of a degree, the negative impact of plagiarism charges on his ability to continue education or find employment, and mental and emotional distress.  *Id.* ¶¶ 60–62.

### B.  Procedural Background

On September 20, 2022, Plaintiff filed an initial complaint in this case.  ECF No. 1.  Upon Defendants' filing of a motion to dismiss the complaint (ECF No. 15), Plaintiff filed an amended complaint on December 20, 2022 (ECF No. 19).  Plaintiff's amended complaint asserts claims for: violation of due process under 42 U.S.C. § 1983 (Count One); violation of the New Jersey Consumer Fraud Act ("NJCFA") (Count Two); breach of the duty of good faith and fair dealing (Count Three); breach of contract (Count Four); negligence (Count Five); and negligent infliction of emotional distress (Count Six).  *Id.*  Defendants filed the instant motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) on January 3, 2023.  ECF No. 21. Plaintiff opposed the motion (ECF No. 25) and Defendants replied (ECF No. 26).

### III.  LEGAL STANDARD

### Federal Rule of Civil Procedure 12(b)(6)

To survive dismissal under Rule 12(b)(6), a complaint must meet the pleading requirements of Rule 8(a)(2) and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  In

evaluating the sufficiency of a complaint, a court must also draw all reasonable inferences in favor of the non-moving party. *Phillips*, 515 F.3d at 234. Ultimately, a complaint "that offers 'labels and conclusions' or . . . tenders 'naked assertions' devoid of further factual enhancement," will not withstand dismissal under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678 (citations omitted).

IV.   **DISCUSSION**

**A. Due Process (Count One)**

Defendants move to dismiss Plaintiff's due process claim on the basis that Plaintiff does not allege any state action. ECF No. 21-1 ("Def. Br.") at 7. In response, Plaintiff concedes this cause of action, noting that he "will not be pursuing [his] 42 U.S.C § 1983 [claim] against Defendants." Opp. at 1. Therefore, Plaintiff's due process claim is dismissed.

**B. Breach of Contract (Count Four)**

"Generally speaking, to state a claim for breach of contract, a plaintiff must allege: (1) the existence of a valid contract between the parties; (2) plaintiff's performance of their own obligations under that contract; (3) defective or deficient performance under the contract by a defendant; and (4) damages resulting from defendant's breach." *Powell v. Seton Hall Univ.*, No. 221CV13709WJMJSA, 2022 WL 1224959, at *8 (D.N.J. Apr. 26, 2022) (citing *Goldfarb v. Solimine*, 245 N.J. 326, 338 (2021)). However, New Jersey courts "have recognized that the relationship between a university and its students often times cannot be classified as purely contractual and that some deference towards a university's decisions is warranted." *Id.* (citing *Doe v. Princeton Univ.*, 790 F. App'x 379, 385 (3d Cir. 2019)). Accordingly, "[w]here a case involves academic dismissal, student misconduct, or the application of policies in a student manual, courts have typically limited their review of university action to a consideration of whether (1) the university substantially departed from its own rules and regulations, (2) the procedures employed

by the university were fundamentally fair, and (3) the university's decisions were supported by sufficient evidence." *Id.* at \*9 (citing *Keles v. Bender*, No. Civil No. 17-1299 (ES) (JAD), 2021 WL 568105, at \*4 (D.N.J. Feb. 16, 2021)).

Plaintiff first alleges that Capella violated University policy 3.04.06 ("Access to Learning Resources"). FAC ¶¶ 100–01. Policy 3.04.06 states:

> **POLICY STATEMENT**
> Access to the online courseroom, the Capella University Library, Campus, and other Capella learning resources is limited to Capella learners, faculty, and staff, except when such access is necessary for regulatory, accreditation, or other business purposes and has been authorized by the provost. Access to Capella learning resources must be authorized and granted in accordance with the procedures established to support this policy. *Access to Capella learning resources must neither infringe on the activities of learners and faculty nor threaten the academic integrity of the courseroom or the university.*
>
> **RATIONALE**
> Capella University recognizes the need to provide limited access to the online courseroom, the Capella University Library, Campus, and other Capella learning resources to individuals other than Capella learners, alumni, faculty, and staff, as described in this policy. Although the courseroom, Capella University Library, Campus, and other secure Capella learning resources are not open for public access, they are neither private nor confidential domains. Neither learners nor faculty should assume privacy within these areas.

ECF No. 21-2 ("Miltich Decl."), Ex. 2 (emphasis added).[5] Plaintiff specifically relies on the portion of the policy emphasized above to contend that Capella breached its rules and regulations when it failed to ensure that Plaintiff had proper access to the online learning library during the Remediation Assignment period. FAC ¶ 100. Defendants argue, however, that the text of the policy does not require Capella to have provided Plaintiff with such access. Def. Br. at 14.

---

[5] The Third Circuit has held that courts deciding a motion to dismiss "may consider document[s] integral to or explicitly relied upon in the complaint, or . . . matters incorporated by reference or integral to the claim." *Pinkney v. Meadville, Pennsylvania*, No. 21-1051, 2022 WL 1616972, at \*2 (3d Cir. May 23, 2022) (citations and quotations omitted). Although Plaintiff did not include the Capella policy as an exhibit to his amended complaint, a link to the policy is cited, FAC ¶ 100 n.3, and the policy is clearly relied upon. *See id.* ¶¶ 96–105. Therefore, the Court considers the policy in assessing the sufficiency of Plaintiff's complaint against Defendants' motion to dismiss.

The Court finds that when the policy is read as a whole, as it must be, Plaintiff has not plausibly claimed that Capella "substantially departed from its own rules and regulations." *Powell*, 2022 WL 1224959, at *9; s*ee Annecharico v. Raymour & Flanigan*, No. CV 16-1652(FLW), 2016 WL 7015615, at *4 (D.N.J. Nov. 30, 2016) ("In New Jersey, contract provisions are to be 'read as a whole, without artificial emphasis on one section, with a consequent disregard for others . . . . Literalism must give way to context.'" (quoting *Borough of Princeton v. Bd. of Chosen Freeholders of Mercer*, 333 N.J. Super 310, 325 (App. Div. 2000), *aff'd*, 169 N.J. 135 (2001))). The "Rationale" section of policy 3.04.06 establishes that "Capella University recognizes the need to provide limited access to the online courseroom, the Capella University Library, Campus, and other Capella learning resources *to individuals other than Capella learners, alumni, faculty, and staff, as described in this policy*." Miltich Decl., Ex. 2 (emphasis added). This context reveals that Plaintiff's cited sentence speaks to the rights of Capella students vis-à-vis the University's grant of access to "individuals other than Capella learners, alumni, faculty, and staff," not the students' right to access Capella academic resources on a general basis. Plaintiff does not allege to have been affected by access granted to such non-Capella-affiliated individuals. Therefore, Plaintiff does not state a plausible claim for breach of contract through violation of University policy 3.04.06.

Plaintiff next argues that Capella breached "its policies and procedures" when it used SafeAssign, a program that was "known to be faulty." FAC ¶ 103–04. Defendants contend that this claim too fails because Plaintiff does not identify a specific policy provision that Defendants allegedly breached. Def. Br. at 15. The Court agrees with Defendants. Courts considering plaintiffs' breach of contract claims in the education context "have required [the] plaintiff to identify a specific policy that the university breached and allege how the university breached it in

7

a substantial way that exceeds the wide bounds of discretion afforded to universities." *Keles*, 2021 WL 568105, at *4.  Plaintiff does not clearly identify what rule, regulation, or policy Capella supposedly violated by employing use of SafeAssign during the grading process as to constitute a breach of contract.[6]  *See* FAC ¶ 103; Opp. at 2–3.  Therefore, Plaintiff's claim for breach of contract must be dismissed.

C. **Remaining Claims:  Violation of the NJCFA (Count Two), Breach of the Duty of Good Faith and Fair Dealing (Count Three), Negligence (Count Five), and Negligent Infliction of Emotional Distress (Count Six).**

Defendants move to dismiss the remainder of Plaintiff's claims under the theory that they sound in educational malpractice, a cause of action that New Jersey courts do not recognize. Defendants are correct that "claims sounding in the tort of educational malpractice are barred" in New Jersey.  *Fittipaldi v. Monmouth Univ.*, No. CV2005526MASZNQ, 2021 WL 2210740, at *6 (D.N.J. June 1, 2021).  Accordingly, claims asserted by Plaintiff that suggest that Capella "breached a duty of care or that the quality of [his] education was affected by malpractice on the part of the school . . . should be barred." *Id.* at *5.

Plaintiff claims that Capella's use of SafeAssign "resulted in low quality student services and unfair grading" and that Capella and the individual defendants breached a duty of care in evaluating Plaintiff's assignment with a software known to be faulty as part of the grading process. FAC ¶¶ 94, 107a, 108d, 109c.  As Defendants argue, such direct challenges to the quality of Plaintiff's Capella educational experience, although characterized as good faith and fair dealing and negligence claims, would require impermissible "second-guessing academic judgments" and may not proceed.  *Kostic v. Seton Hall Univ.*, No. CV 20-5566, 2021 WL 9667962, at *2 (D.N.J.

---

[6] Even if the Court assumed that Plaintiff's breach of contract claim for use of SafeAssign was predicated specifically upon Capella policy 3.04.07—a violation alleged in the NJCFA section of Plaintiff's amended complaint—Plaintiff would not state a plausible claim for reasons discussed in Section IV.C.1 *infra*.

May 27, 2021); *see O'Brien v. Pennington Sch.*, No. CIV.A. 06-2101, 2008 WL 160588, at *6 (E.D. Pa. Jan. 15, 2008) ("[New Jersey courts have noted that" "claims based on inadequate or ineffective educational services . . . are comparable to a tort claim for educational malpractice.").

However, the remainder of Plaintiff's allegations, including those targeting Capella's allegedly deceptive conduct and problematic disciplinary process fall beyond the parameters of the doctrine. *See Winter v. Am. Inst. of Med. Scis. & Educ.*, 242 F. Supp. 3d 206, 224 (S.D.N.Y. 2017) ("While New Jersey courts will not intervene in conflicts predicated upon the quality and adequacy of the course of instruction, they will resolve conflicts that involve determining 'whether the procedures followed were in accordance with the institution's rules and regulations.'" (quoting *Mittra v. Univ. of Med. and Dentistry of N.J.*, 316 N.J. Super. 83, 90 (App. Div. 1998))). Defendants nevertheless contend that each claim fails individually as a matter of law for independent reasons. The Court considers each of Plaintiff's remaining causes of action in turn below.

### 1. Violation of the NJCFA (Count Two)

To state a claim under the NJCFA, a plaintiff must allege "(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009) (citing *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.,* 192 N.J. 372, 389 (2007)). Further, "[i]t is well-established that NJCFA claims must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b)." *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011) (citations omitted). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Plaintiff's amended complaint asserts that Capella made an intentional misrepresentation, as to breach the NJCFA, specifically through a University policy that states Capella is "committed to 'ethical, fair, and unbiased' grading," which "deceived and induced students" seeking a "high-quality education to attend" Capella.  FAC ¶¶ 84–86.  Plaintiff contends that Donovan's statement about SafeAssign's imperfections demonstrates that Capella knew such a statement was untrue and therefore Capella misrepresented "the true standard and quality of its PsyD program."  *Id.*

Plaintiff's claim under the NJCFA fails at this juncture.  The policy Plaintiff relies upon, policy 3.04.07 ("Grading"), reads:  "Capella University demonstrates its commitment to ethical, fair, and unbiased evaluation of learning *by defining program learning in terms of course competencies and program learning outcomes*."  Miltich Decl., Ex. 3 (emphasis added).  Plaintiff's amended complaint does not allege any facts that indicate Capella failed to "define program learning."  Instead, Plaintiff alleges that Capella used a faulty plagiarism detection tool and that it dismissed him improperly, neither of which plausibly render the policy a deceptive misstatement. FAC ¶¶ 85–86.

Moreover, even if Capella could be found to have violated the policy, such conduct would not amount to an NJCFA claim.  *Wysocki v. Wardlaw-Hartridge School* is instructive.  No. 2:21-CV-14132 (WJM), 2022 WL 2168212 (D.N.J. June 16, 2022).  In *Wysocki*, a student plaintiff alleged that her school "made affirmative misrepresentations in its Handbook," a set of school policies, "as part of a fraudulent business practice" to induce enrollment.  *Id.* at *3, 12.  The court found that the student's complaint failed to plead facts showing an unlawful practice as "the alleged misrepresentations concerning the Handbook's policies merely constitute [the school's] alleged failure to adhere to its own policies and procedures," conduct insufficient to state a claim under the NJCFA.  *Id.* at *12; *see Hunt Constr. Group, Inc. v. Hun Sch. of Princeton*, No. 08-

03550, 2009 WL 1312591, at *6 (D.N.J. May 11, 2009) (dismissing NJCFA counterclaim because defendant merely alleged that "[plaintiff] failed to abide by its obligations under the contract"). Here, too, Plaintiff's contentions that Capella misrepresented itself when its conduct supposedly did not comport with University policy 3.04.07 are insufficient to constitute an unlawful practice. Therefore, Plaintiff's NJCFA claim must be dismissed.[7]

## 2.   Breach of the Duty of Good Faith and Fair Dealing (Count Three)

"In New Jersey, '[e]very contract contains an implied covenant of good faith and fair dealing.'" *Princeton Univ.*, 30 F.4th at 348 (quoting W*ade v. Kessler Inst.*, 172 N.J. 327, 340 (2002)).  "The implied covenant prohibits either party from doing 'anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Id.* (quoting *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420 (1997)).  Thus, a "'plaintiff may be entitled to relief under the covenant [of good faith and fair dealing] if its reasonable expectations are destroyed when a defendant acts with ill motives and without any legitimate purpose.'" *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 267 (3d Cir. 2008) (quoting *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 226 (2005) (alteration in original)).

Plaintiff first alleges that Capella "fraudulently induced Plaintiff to enroll in [its] PsyD program, which Defendant [Capella] claimed would follow the standards of grading and services outlined in the contract, when Defendant [Capella] knew or should have known that the program would not actually do so."  FAC ¶ 94.  However, a claim about conduct occurring prior to his enrollment at the school cannot serve as a basis for breach of the duty of good faith and fair dealing.

---

[7] Defendants argue that Plaintiff's amended complaint fails to comply with Federal Rule of Civil Procedure 9's heightened pleading standard as applicable to NJCFA claims.  The Court need not reach that argument in light of dismissal on other grounds.

*See Princeton Univ.*, 30 F.4th at 348 ("[T]he covenant 'allow[s] redress for the bad faith *performance* of an agreement.'" (quoting *Seidenberg v. Summit Bank*, 348 N.J. Super. 243, 257 (App. Div. 2002) (emphasis added))); Restatement (Second) of Contracts § 205 cmt. c (Am. L. Inst. 1981) (noting the covenant of good faith and fair dealing "does not deal with good faith in the formation of a contract").

Turning to the disciplinary process, Defendants argue that Plaintiff fails to sufficiently allege Defendants engaged in bad faith conduct. Although Plaintiff need not explicitly invoke the words "bad motive" or "bad intentions," he must set forth that Defendants acted with ill motive or "arbitrarily, unreasonably, or capriciously" to state a claim for breach of the duty of good faith and fair dealing. *Jannarone v. Sunpower Corp.*, No. CV189612MASTJB, 2019 WL 4058981, at *6 (D.N.J. Aug. 28, 2019). However, Plaintiff's amended complaint instead suggests that Capella and its faculty engaged in a seemingly deliberate, systematic disciplinary review process that included at least five layers: the preliminary SafeAssign report (FAC ¶ 25), Donovan's initial assessment (*id.* ¶ 25–32), the Learner Affairs Department's review (*id.* ¶ 32–33), the Faculty Review Panel adjudication and remediation process (*id.* ¶ 40–43, 46–53), and finally two different President's Designees for Academic Appeals examining Plaintiff's contentions (*id.* ¶ 45, 56). At each stage, the respective individual or body found that the plagiarism violation was proper and/or that Plaintiff inadequately performed his Remediation Assignment. Plaintiff's invocation of being locked out of his Capella online library account during the Remediation Assignment period as a basis for bad faith is likewise insufficient. Opp. at 5. The amended complaint does not allege that Capella or any of the individual Defendants undertook conduct to lock him out; it merely states that "he had gotten locked out." FAC ¶ 46. Plaintiff fails to identify an ill motive or intention or conduct that plausibly constitutes arbitrary, unreasonable, or capricious conduct. *See Jannarone*,

2019 WL 4058981, at *6; *see also Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 230 (1985) (Powell, J., concurring) ("Judicial review of academic decisions, including those with respect to the admission or dismissal of students, is rarely appropriate, particularly where orderly administrative procedures are followed."). Therefore, Plaintiff's claim for breach of the covenant of good faith and fair dealing is dismissed.[8]

### 3.   Negligence (Count Five)

Under New Jersey law, a plaintiff stating a claim for negligence must sufficiently allege: (1) the existence of a duty owed by defendant towards plaintiff; (2) a breach of that duty by defendant; (3) that defendant's breach proximately caused plaintiff's injuries; and (4) that plaintiff suffered damages as a result. *Townsend v. Pierre*, 221 N.J. 36, 51 (2015). "The threshold inquiry is whether the defendant owed the plaintiff a duty of care, the existence of which is generally a matter of law." *Wysocki*, 2022 WL 2168212, at *6 (citing *Leonard v. Golden Touch Transp. of N.Y. Inc.*, 144 F. Supp. 3d 640, 644 (D.N.J. 2015)).

Plaintiff first contends that members of the Learner Affairs Panel, including Loehrer, Trunk, Johnson, and Baumberger, were negligent in failing to follow policy and procedure during

---

[8] Defendants also argue that Plaintiff fails to allege bad faith conduct that goes beyond the scope of his breach of contract claims. Under New Jersey law, "a plaintiff cannot maintain a claim for breach of the implied covenant of good faith and fair dealing when the conduct at issue is governed by the terms of an express contract or the cause of action arises out of the same conduct underlying the alleged breach of contract." *Hahn v. OnBoard LLC*, 2009 WL 4508580, at *6 (D.N.J. Nov. 16, 2009) (citing *Wade*, 172 N.J. at 340–41); *see Cedar Holdings, LLC v. Menashe*, No. CV 16-7152, 2017 WL 1349321, at *3 (D.N.J. Apr. 7, 2017) ("Plaintiffs allege that Defendants breached the literal terms of the Letter of Intent. Thus, its breach of the implied covenant claim is duplicative of the breach of contract claim and will be dismissed."). Here, Plaintiff's amended complaint states that Capella "knew or should have known that the Defendant's Safe Assign system did not uphold the conditions required of them on their end of the contractual agreement." FAC ¶ 94. Plaintiff reiterates the same message in his opposition brief. Opp. at 3; *see id.* at 4 ("Defendants did commit bad faith and breach express terms of the agreement, and Plaintiff was denied the benefit of the bargain due to Defendants' breach."). These good faith and fair dealing claims that also serve as the basis for breach of contract must be dismissed as duplicative.

the disciplinary proceedings, including failure to inform him who was on the Learned Affairs Panel and who would be grading his paper and to sufficiently advise him on the citation requirement. FAC ¶ 108.  Plaintiff also claims Capella was negligent in "[f]ailing to ensure that Plaintiff's contractual educational services were being provided as per the terms of the contract;" "[f]ailing to ensure that Plaintiff's University's library access was functioning properly;" and "[f]ailing to assist Plaintiff after being informed of the individual Defendant's [sic] negligence."  FAC ¶ 109.

As an initial matter, Defendants argue Plaintiff has waived his negligence claim for failure to advance any respective argument in his opposition.  Reply at 8.  It is true that "[c]ourts in this District have held that the failure to respond to an argument advanced in support of a motion to dismiss results in a waiver of the claim sought to be dismissed."  *Ferrante v. Amgen, Inc.*, No. CIV.A. 13-07344 SRC, 2014 WL 1092555, at *7 (D.N.J. Mar. 18, 2014) (collecting case).  The Court need not make this determination, however, as Plaintiff's negligence claim, to the extent not already barred by the educational malpractice doctrine, is insufficient as pleaded.

Plaintiff has not set forth, and the Court has not identified, any authority indicating that a private university or its employees owe a certain duty of care to its students under New Jersey law when carrying out disciplinary procedures.  The Court need not accept Plaintiff's conclusory statements that such a duty exists.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that, under Rule 8, a plausible claim requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").  Indeed, courts in other jurisdictions considering this issue have not found such a duty to exist under analogous state negligence law.  *See, e.g.*, *Doe v. Syracuse Univ.*, 440 F. Supp. 3d 158, 181–82 (N.D.N.Y. 2020) (dismissing negligence claim related to university's conduct during a Title IX investigation where Plaintiff failed to establish that such a duty of care existed).

Finally, Plaintiff invokes Defendants' purported violations of Capella policies and procedures as a partial basis for his negligence claims. *See* FAC ¶ 108a. He likewise asserts that Capella failed to "ensure that Plaintiff's contractual educational services were being provided as per the terms of the contract." FAC ¶ 109a. Plaintiff, however, cannot covert claims sounding in breach of contract to negligence claims simply by contending that failure to abide by contractual terms amounts to a breach of a legal duty. *See Minella v. Electron Microscopy Scis.*, No. CV 21-15906-ZNQ-RLS, 2022 WL 4300222, at *4 (D.N.J. Sept. 19, 2022) ("[Under New Jersey law,] a plaintiff is barred from asserting a tort claim arising from a contractual relationship unless the breaching party owed a duty independent of the duties that arose under the contract. . . . '[M]ere failure to fulfill obligations encompassed by the parties' contract, including the implied duty of good faith and fair dealing, is not actionable in tort.'" (citations omitted)); *see also Syracuse Univ.*, 440 F. Supp. 3d at 181 ("Plaintiff's contract claim, however, cannot be transformed into a tort claim simply by alleging a duty of care."). In short, Plaintiff fails to identify a duty of care or otherwise assert negligence claims not barred by the educational malpractice doctrine or subsumed by his contractual claims. Accordingly, Plaintiff's negligence claim is dismissed.

### 4.  Negligent Infliction of Emotional Distress (Count Six)

Turning to Plaintiff's final claim, negligent infliction of emotional distress, the applicable standard is as follows:

> Under New Jersey law, there are two legal theories under which a plaintiff can establish a *prima facie* claim for negligent infliction of emotional distress. First, a plaintiff can show: 1) "death or serious physical injury of another caused by defendant's negligence; 2) a marital or intimate family relationship between plaintiff and the injured person; 3) observation of the death or injury at the scene of the accident; and 4) resulting severe emotional distress." *Fleming v. United Parcel Serv., Inc.*, 255 N.J. Super. 108, 166 (Law. Div. 1992). Second, a plaintiff can show "the defendant's negligent conduct placed the plaintiff in 'reasonable fear of immediate personal injury' which gave rise to emotional distress that resulted in a

substantial bodily injury or sickness." *Jablonowska v. Suther*, 195 N.J. 91, 103 (2008).

*Van Tassel v. Ocean Cty.*, No. 16-4761, 2017 WL 5565208, at *9 (D.N.J. Nov. 17, 2017).  Plaintiff alleges that as a result of the disciplinary events he experienced "emotional distress, worrying about his academic future, professional career and financial future."  FAC ¶ 112; *see* Opp. at 6. Setting aside the Court's discussion of Plaintiff's failure to establish a duty of care owed by Capella or the individual Defendants as required to plead a negligent infliction of emotional distress claim, *see Wysock*i, 2022 WL 2168212, at *8, such contentions also fail to satisfy either of the above negligent infliction of emotional distress theories.   There is no indication that Defendants caused the death or serious physical injury of another, meaning Plaintiff cannot plausibly state a claim under the first theory.  *See Van Tassel*, 2017 WL 5565208, at *9; *Fleming*, 255 N.J. Super. at 166. Plaintiff's allegations likewise fail under the second theory because there is no indication that he was placed in fear of immediate personal injury. *See Van Tassel*, 2017 WL 5565208, at *9; *Jablonowska*, 195 N.J. at 103.  Therefore, Plaintiff has failed to state a claim for negligent infliction of emotional distress against Defendants, and the claim will be dismissed.

## V.   CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss (ECF No. 21) is granted in its entirety.  An appropriate Order accompanies this Opinion.

**DATED**:  August 22, 2023

*s/ Claire C. Cecchi*

**CLAIRE C. CECCHI, U.S.D.J.**