NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MATTHEW DONOHUE, <br><br> Plaintiff, <br><br> v. <br><br> CAPELLA UNIVERSITY, LLC, *et al.*, <br><br> Defendants. | Civil Action No.: 22-5634 <br><br> **OPINION & ORDER** |

**CECCHI, District Judge.**

I. **INTRODUCTION**

This matter comes before the Court on defendant Capella University, LLC's ("Capella") motion to dismiss plaintiff Matthew Donohue's ("Plaintiff") second amended complaint (ECF No. 40, "SAC"). ECF No. 45; *see* ECF No. 45-1 ("Def. Br."). Plaintiff opposed Capella's motion (ECF No. 49, "Opp."), and Capella replied in support of its motion (ECF No. 52, "Reply"). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Capella's motion is **GRANTED**.

II. **BACKGROUND**

A. **Factual Background[1]**

This action arises out of Plaintiff's allegations of being dismissed from enrollment as a Capella University student due to faulty plagiarism detection software. Plaintiff, a New Jersey citizen, is a former doctoral student at Capella, a private, Minnesota-based academic institution offering online learning throughout the United States. SAC ¶¶ 2–3, 9. Plaintiff contends that he

---

[1] For the purposes of this motion to dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to the Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

1

chose to attend Capella to pursue a psychology degree, with the intent of becoming a licensed therapist, and, accordingly, entered into a contractual agreement with Capella under which he paid tuition in exchange for educational services. *Id.* ¶¶ 11–12. Moreover, upon enrolling, "Plaintiff had an expectation that [Capella] would operate their courses offered in [a] fair, competent, reasonable and unbiased manner." *Id.* ¶ 10

During the 2020 winter semester, Plaintiff was enrolled in Professor Amy Donovan's class, PSY8501. *Id.* ¶ 14; Def. Br. at 6. In February 2020, Plaintiff submitted his Unit 4 assignment for the class. SAC ¶ 15. On February 14, 2020, Donovan informed Plaintiff via email that Safe Assign, a program used by Capella faculty to detect plagiarism in student submissions, characterized Plaintiff's assignment as 100% plagiarized. *Id.* ¶¶ 16, 18. Donovan informed Plaintiff that it appeared "large parts of [his] work were taken from another student's assignment" and gave Plaintiff a grade of 0% accordingly. *Id.* ¶¶ 20–21.

Plaintiff contends that Safe Assign is known to produce faulty results and that Donovan stated to Plaintiff, "I do know very well that plagiarism tools can be faulty." *Id.* ¶¶ 17, 19. Nevertheless, Donovan proceeded to submit an "Academic Honesty Violation" form to Capella's Learner Affairs Department to investigate the alleged plagiarism. *Id.* ¶ 22. Plaintiff subsequently participated in a phone call in which he "stated he was willing to accept the grade of 0% on the Assignment, despite having done nothing wrong, and move on."[2] *Id.* ¶ 23.

---

[2] Plaintiff does not indicate with whom who this phone call took place. However, based on the SAC's surrounding allegations and those contained in Plaintiff's FAC, the Court accepts Defendant's assumption that this was a telephone call with a review panel from the Lerner Affairs Department. *See* Def. Br. at 7 n.2, n.3. Plaintiff's subsequent references to "the Panel," which is not defined, are understood to be in reference to this group and the Court will refer to it as such accordingly.

On May 13, 2020, the Panel found that Plaintiff's conduct constituted a violation of Capella policy 3.01.01 ("Academic Integrity and Honesty").³ *Id.* ¶ 25. Plaintiff contends that the Panel "failed to take into consideration the faultiness of Safe Assign with full knowledge of its limitations and faulty results." *Id.* ¶ 26. Plaintiff's multiple appeals of this decision were unsuccessful, and Plaintiff was dismissed from Capella without opportunity for readmission. *Id.* ¶¶ 27–31.

Plaintiff contends that Capella "collected monetary payments from Plaintiff and failed to provide the required services in breach of contract," specifically "[in]adequate services" when utilizing "knowingly faulty software." *Id.* ¶¶ 32–33. Plaintiff explains that Capella failed to notify him about the intended use of Safe Assign "at the time the contract was executed" and such "false statements and/or false statements by omission breached the contract with Plaintiff." *Id.* ¶¶ 34–35. Plaintiff does not identify or attach as an exhibit any particular contract.

Plaintiff further contends that utilization of the software was the "direct and proximate cause" of his injuries. *Id.* ¶ 36. Those specific injuries include spending time and resources addressing the plagiarism allegations and dismissal from Capella, along with at least two years of lost wages working with a doctoral degree, and various housing costs associated with pursuing that degree. *Id.* ¶¶ 37–38. Plaintiff adds that the plagiarism charges adversely affect his ability to continue his education or find employment and have caused him significant mental and emotional distress. *Id.* ¶¶ 39–40.

### B. Procedural History

---

³ In his First Amended Complaint (ECF No. 19, "FAC"), Plaintiff noted that, on February 24, 2020, the Learner Affairs Department informed Plaintiff that "large portions of the [submitted] assignment's content 'appeared' to be copied from another learner's paper" and upheld the grade of 0%. FAC ¶ 33. That allegation is omitted in the further amended complaint.

On September 20, 2022, Plaintiff filed his initial complaint in this case. ECF No. 1. Following Plaintiff's filing of an amended complaint on December 20, 2022 (FAC),[4] the Court granted Defendants' motion to dismiss in its entirety without prejudice for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* ECF Nos. 37, 38. On September 21, 2023, Plaintiff filed his SAC against Capella reiterating two of his previous claims: breach of the covenant of good faith and fair dealing (Count One), and breach of contract (Count Two). *See* SAC. On October 5, 2023, Capella moved to dismiss the SAC pursuant to Rule 12(b)(6). *See* ECF No. 45; Def. Br. Plaintiff opposed Capella's motion (*see* Opp.) and Capella replied (*see* Reply).

## III.   LEGAL STANDARD

**Federal Rule of Civil Procedure 12(b)(6)**[5]

To survive dismissal under Rule 12(b)(6), a complaint must meet the pleading requirements of Rule 8(a)(2) and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). In evaluating the sufficiency of a complaint, a court must also draw all reasonable inferences in favor

---

[4] Plaintiff's amended complaint asserted claims against Capella, in addition to several individual employees (collectively, "Defendants"), for: violation of due process under 42 U.S.C. § 1983; violation of the New Jersey Consumer Fraud Act; breach of the duty of good faith and fair dealing; breach of contract; negligence; and negligent infliction of emotional distress. *See* FAC. Plaintiff did not reallege his claims against the individual employees or any of the non-contractual claims against Capella in his SAC. *See* SAC.

[5] In support of the sufficiency of his complaint and in opposition to dismissal, Plaintiff declares that "New Jersey is a notice-pleading state, requiring only that a general statement of the claim need be pleaded." Opp. at 3 (quoting *Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 746 (1989)); *see* Opp. at 5. Nevertheless, "[a] federal court sitting in diversity applies the Federal Rules of Civil Procedure . . . . 'Therefore, Federal Rule of Civil Procedure 8(a), and not [state] law, provides the standard of specificity applicable to plaintiff's [contractual] claim[s].'" *Abdellatif v. Alza Wrae Indus. Co.*, No. 18-cv-2297, 2019 WL 1284689, at *9 (E.D. Pa. Mar. 20, 2019) (quoting *Tuman v. Genesis Associates*, 935 F. Supp. 1375, 1391 (E.D. Pa. 1996)). Therefore, New Jersey's pleading requirements are not controlling in this matter.

of the non-moving party. *Phillips*, 515 F.3d at 234. Ultimately, a complaint "that offers 'labels and conclusions' or . . . tenders 'naked assertions' devoid of further factual enhancement," will not withstand dismissal under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678 (citations omitted).

## IV.  DISCUSSION

### A. Breach of the Duty of Good Faith and Fair Dealing (Count One)

As to Plaintiff's claims regarding Capella's alleged violation of the duty of good faith and fair dealing, the Court previously explained:

> "In New Jersey, '[e]very contract contains an implied covenant of good faith and fair dealing.'" [*Doe v.*] *Princeton Univ.*, 30 F.4th [335,] 348 [(3d Cir. 2022)] (quoting *Wade v. Kessler Inst.*, 172 N.J. 327, 340 (2002)). "The implied covenant prohibits either party from doing 'anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Id.* (quoting *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420 (1997)). Thus, a "'plaintiff may be entitled to relief under the covenant [of good faith and fair dealing] if its reasonable expectations are destroyed when a defendant acts with ill motives and without any legitimate purpose.'" *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 267 (3d Cir. 2008) (quoting *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 226 (2005) (alteration in original)).

ECF No. 37 at 11.

Capella sets forth three arguments in favor of dismissal: First, Plaintiff reiterates the previously rejected argument that Capella acted in bad faith when it purportedly made misrepresentations to Plaintiff for purposes of inducing his enrollment at Capella. *See* Def. Br. at 15. Second, Plaintiffs allegations are insufficient because they impermissibly amount to educational malpractice claims and are improperly duplicative of his breach of contract claims. *Id.* at 16. Third, Plaintiff again fails to proffer sufficient allegations of bad faith conduct on the part of Capella as required to state a claim for breach of the duty of good faith and fair dealing. *Id.* at 16–17.

In considering Capella's motion to dismiss Plaintiff's FAC, the Court explained that "a claim about conduct occurring prior to [Plaintiff's] enrollment at the school cannot serve as a basis

for breach of the duty of good faith and fair dealing." ECF No. 37 at 11–12 (citing *Princeton Univ.*, 30 F.4th at 348 ("[T]he covenant 'allow[s] redress for the bad faith *performance* of an agreement.'" (quoting *Seidenberg v. Summit Bank*, 348 N.J. Super. 243, 257 (App. Div. 2002) (emphasis added)); Restatement (Second) of Contracts § 205 cmt. c (Am. L. Inst. 1981) (noting the covenant of good faith and fair dealing "does not deal with good faith in the formation of a contract")). Here, again, Plaintiff claims that the allegations in the SAC reflect that "Defendants exercised bad faith when they enticed Plaintiff to enroll in a university where one would expect faculty members to have the sole provenance of determining grades and academic dishonesty." Opp. at 5. However, Plaintiff's claims regarding Capella's conduct, even when accepted as true, relate to the *formation* of a purported contract, rather than the *performance* of any agreement, rendering them inapplicable for purposes of a good faith and fair dealing claim.

Next, Plaintiff contends that his factual allegations demonstrate Capella operated in bad faith during the course of the contractual relationship by using "the faulty Safe Assign software in place of faculty determinations." *Id.* This is likewise unavailing. As an initial matter, as the Court previously explained, challenges to the adequacy of grading processes and student services that sound in educational malpractice but are disguised as contractual claims are improper. *See* ECF No. 37 at 8–9; *Kostic v. Seton Hall Univ.*, No. 20- cv-5566, 2021 WL 9667962, at *2 (D.N.J. May 27, 2021) (explaining that legal challenges requiring "second-guessing academic judgments" are impermissible); *O'Brien v. Pennington Sch.*, No. 06-cv-2101, 2008 WL 160588, at *6 (E.D. Pa. Jan. 15, 2008) ("[New Jersey courts have noted that" "claims based on inadequate or ineffective educational services . . . are comparable to a tort claim for educational malpractice.")

Moreover, if, to any extent, Plaintiff's contentions can be understood to fall outside the ambit of New Jersey's bar on educational malpractice claims, they would still need to plausibly

6

allege that Capella acted with ill motive or "arbitrarily, unreasonably, or capriciously." *Jannarone v. Sunpower Corp.*, No. 18-cv-9612, 2019 WL 4058981, at *6 (D.N.J. Aug. 28, 2019). Here, rather, Plaintiff's allegations reflect a disciplinary process that involved at least three deliberate layers: (1) Professor Donovan's identification and review of the potential plagiarism and subsequent creation of a report (*see* SAC ¶ 18–22); (2) the Panel's engagement with Plaintiff and ultimate affirmance of Professor Donovan's findings (*id.* ¶¶ 22–25); and (3) the President's Designee for Academic Appeals' adjudication of Plaintiff's further escalation of the infraction (*id.* ¶¶ 27–31). Indeed, per the face of Plaintiff's SAC, as was the case with his FAC, Capella engaged in a systematic scrutinization of Plaintiff's allegedly improper conduct, with each level of review reaching the same conclusion: that he had, in fact, plagiarized his assignment. In short, Plaintiff's allegations are devoid of an ill motive and Capella's conduct cannot be said to have no legitimate purpose. *See DiCarlo*, 530 F.3d at 267; *see also Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 230 (1985) (Powell, J., concurring) ("Judicial review of academic decisions, including those with respect to the admission or dismissal of students, is rarely appropriate, particularly where orderly administrative procedures are followed.").

Finally, Plaintiff's allegations with respect to his good faith and fair dealing claim arise from the same conduct as his breach of contract claim. Under New Jersey law, such overlapping allegations are insufficient to state a claim for breach of the duty of good faith and fair dealing. *See Hahn v. OnBoard LLC*, No. 09-cv-03639, 2009 WL 4508580, at *6 (D.N.J. Nov. 16, 2009) ("[A] plaintiff cannot maintain a claim for breach of the implied covenant of good faith and fair dealing when the conduct at issue is governed by the terms of an express contract or the cause of action arises out of the same conduct underlying the alleged breach of contract."). Therefore, Plaintiff's claim for breach of the duty of good faith and fair dealing will be dismissed.

### B. Breach of Contract (Count Two)

The legal relationship between students and educational institutions is distinct from that between traditional parties to a contract. Indeed, as the Court explained in dismissing Plaintiff's FAC:

> New Jersey courts "have recognized that the relationship between a university and its students often times cannot be classified as purely contractual and that some deference towards a university's decisions is warranted." [*Powell v. Seton Hall Univ.*, No. 21-cv-13709, 2022 WL 1224959, at *8 (D.N.J. Apr. 26, 2022)] (citing *Doe v. Princeton Univ.*, 790 F. App'x 379, 385 (3d Cir. 2019)). Accordingly, "[w]here a case involves academic dismissal, student misconduct, or the application of policies in a student manual, courts have typically limited their review of university action to a consideration of whether (1) the university substantially departed from its own rules and regulations, (2) the procedures employed by the university were fundamentally fair, and (3) the university's decisions were supported by sufficient evidence." *Id.* at *9 (citing *Keles v. Bender*, No. Civil No. 17-1299 (ES) (JAD), 2021 WL 568105, at *4 (D.N.J. Feb. 16, 2021)).

ECF No. 37 at 5–6.

Capella argues that Plaintiff's SAC suffers from a fatal flaw from the outset insofar as it fails to identify any specific policy, rule, or regulation, let alone how Capella departed from any such provision in a substantial manner. *See Keles*, 2021 WL 568105, at *4 (noting that courts considering breach of contract claims in the education context "have required [the] plaintiff to identify a specific policy that the university breached and allege how the university breached it in a substantial way that exceeds the wide bounds of discretion afforded to universities."). Plaintiff, in opposition, argues that this requirement is satisfied because "Plaintiff acknowledges in [his] complaint that both policies and procedures relevant to Safe Assign were violated, incorporating multiple policies and procedures affecting or affected by Safe Assign therein." Opp. at 2. Plaintiff adds that "One of these incorporated policies, for example, is Academic and Integrity policy 3.01.01." *Id.*

8

Plaintiff's position is entirely unpersuasive. As an initial matter, at no point in Plaintiff's SAC does he specifically allege that Capella violated Policy 3.01.01. Rather, Plaintiff's sole reference to that policy describes how *Plaintiff's own conduct* was deemed violative. *See* SAC ¶ 25 ("On May 13, 2020, the Panel found Plaintiff in violation of CU policy 3.01.01: 'Academic Integrity and Honesty' because of alleged plagiarism in Plaintiff's assignment."). Plaintiff's mischaracterization of this contention in his opposition as supposed support for the sufficiency of his claim that *Capella* violated Policy 3.01.01 is unavailing. *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss." (citation omitted)); *see also Rosado v. Mueller*, No. 15-cv-3999, 2016 WL 4435672, at *4 (D.N.J. Aug. 17, 2016) ("Although Plaintiff's opposition to Defendants' motion to dismiss contains numerous factual allegations that *may*—in a pleading that meets the requirements of Rule 8(a)—establish the requisite elements of a discrimination claim, Plaintiff may not amend his complaint by way of an opposition brief." (citation omitted)).

In any event, even if the Court assumes *arguendo* that Plaintiff properly alleged such a violation, Plaintiff's reference to the Academic Integrity and Honesty Policy still does not amount to a plausible claim. Though Plaintiff does not provide a copy of the document, he states that Policy 3.01.01 establishes that "academic dishonesty will be resolved by the faculty member or university official directly associated with the course or activity during which the alleged academic dishonesty occurred."[6] Opp. at 2. Relying on this purported provision, Plaintiff argues that use of

---

[6] The Third Circuit has held that courts deciding a motion to dismiss "may consider document[s] integral to or explicitly relied upon in the complaint, or . . . matters incorporated by reference or integral to the claim." *Pinkney v. Meadville, Pennsylvania*, No. 21-cv-1051, 2022 WL 1616972, at *2 (3d Cir. May 23, 2022) (citations and quotations omitted). Although the Court considers the text that Plaintiff contends is included in Policy 3.01.01, the Court notes that the current version of the policy on which Plaintiff relies, as appended by Capella to its reply brief, contains no such statement.

9

Safe Assign was improper because "Capella University [wa]s supplanting human judgment with the oft erroneous Safe Assign software." *Id.* According to Plaintiff, "the rules provide for human-generated reports of academic dishonesty but in no case allows for software such as Safe Assign to report such instances." *Id.*

Contrary to Plaintiff's contentions, the purported policy language does not offer any prohibition on faculty utilizing such software to assist in identifying potential instances of academic dishonestly. It merely states the violations will be "resolved by the faculty member or university official directly associated with the [relevant] course or activity." Opp. at 2. Here, accepting Plaintiff's allegations, that is precisely what occurred—indeed, Professor Donovan explained that it appeared "large parts of Plaintiff's work were taken from another student's assignment" and submitted an academic dishonesty violation (SAC ¶ 20); the allegations were reviewed and confirmed by the Panel (*id.* ¶ 25); and the President's Designee for Academic Appeals, Ms. Shannon Stordahl, considered and denied Plaintiff's appeal of the Panel's decision (*id.* ¶¶ 30–31). It is apparent, then, that several faculty and/or university officials, including the professor directly associated with the class, resolved the alleged violation in alignment with, rather than in contravention to, the cited policy language. Moreover, it would be illogical to read Capella's policy to suggest that professors are never permitted to use technology to facilitate the grading process and that a legal cause of action would be created for students in each such instance.

Next, in the SAC, Plaintiff, without asserting a distinct cause of action, makes cursory references to Capella purportedly breaching an "implied warranty" through its use of Safe Assign. *See id.* ¶ 54 ("Defendant breached its implied warranty when it used the program Safe Assign, known to be faulty, to determine the authenticity of students' work product."). Capella argues that

10

Plaintiffs claim must be dismissed for failure to identify the purported warranty and because no such implied warranty exists for educational claims under New Jersey law. *See* Def. Br. at 11–12.

The Court agrees. Tellingly, Plaintiff entirely fails to grapple with Capella's arguments in his opposition. Indeed, Plaintiff does not identify any implied warranty rooted in law that he believes Capella violated (*e.g.*, the implied warranty of merchantability, implied warranty of fitness for a particular purpose) or any legal authority that connects implied warranties to educational services. Instead, Plaintiff states:

> Plaintiff has already acknowledged in his claim that the breach of contract goes to the heart of policies and procedures in relation to Safe Assign, as stated above. Moreover, Plaintiff pleads with specificity the circumstances under which a breach of implied warranty occurs: "Defendant breached its implied warranty when it used the program Safe Assign, known to be faulty, to determine the authenticity of students' work product." ([SAC] ¶ 54). Therefore, on its face, the implied warranty is one that guarantees a university faculty member, as opposed to software, will be the determinant of a student's grades. The provenance and boundaries of the implied warranty are clear.

Opp. at 3–4. It is unclear to the Court what exactly this means, but, in any event, it is insufficient, in conjunction with the allegations in the SAC, to support a claim for breach of an implied warranty under New Jersey law. Therefore, Plaintiff's claim for breach of contract must be dismissed.[7]

## V.     CONCLUSION

For the reasons set forth above, Capella's motion to dismiss (ECF No. 45) is granted.

Accordingly, IT IS on this 25th day of June, 2024:

**ORDERED** that Capella's motion to dismiss (ECF No. 45) Plaintiff's SAC is **GRANTED WITH PREJUDICE**; and it is further

**ORDERED** that this matter shall remain **CLOSED**.

---

[7] To the extent Plaintiff makes allegations regarding Capella's purported failure to provide "adequate services" in support of his breach of contract claim, such contentions are legally insufficient in light of New Jersey's lack of recognition of an educational malpractice doctrine as explained in Part IV.A *supra*.

**SO ORDERED.**

*s/Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**